Spring Term
1839.

*Averill*
vs
*Guthrie.*

---

Chancery.

# Averill *against* Guthrie.

[Mr. Owsley and Messrs. Haggin and Loughborough, for plaintiff: Messrs. Morehead and Brown for defendant.]

From the Louisville Chancery Court.

May 1.

Chief Justice Robertson delivered the opinion of the Court.

The registration of a second mortgage—which passes only the equity of redemption—does not operate as notice. As between two mortgages, both recorded, the elder prevails, at least, as a security for debts &c. for which it specifically provides. But query—can the holder of a prior mortgage avail himself of it, as a security for subsequent advances, made in faith of it, where he had no notice of the junior mortgage? in other words—is the British doctrine of *tacking*, admissible here? The decision of the Louisville chancellor was in the affirmative. But, as it is the opinion of this court, that some of the elder mortgagee's sub-

This is a contest for priority between a senior and a junior mortgagee. Averill's mortgage was executed in March, and Guthrie's in April, 1834; and each of them was recorded within the time prescribed by the statute.

A part of the property included in those *mortgages* had been previously mortgaged by the same mortgagor, to one Nelson, for about three thousand dollars, and, with the assent of *Averill*, Locke, the mortgagor, sold and conveyed that property to Nelson, in June, 1834, for the price of four thousand dollars—of which Locke received one thousand dollars.

As Nelson was the first mortgagee, the registration of Guthrie's mortgage of the equity of redemption was not constructive notice to *him*; and there being no proof of his having had actual notice before his absolute purchase, he should, as decided by the Chancellor, be unaffected by Guthrie's mortgage.

The controversy between Averill and Guthrie, is confined to a house and lot on Chesnut street (Louisville,) embraced in each of their mortgages.

*Averill's* mortgage, of March, 1834, was given as an indemnity against enumerated liabilities, previously in-

curred by him, as the surety of *Locke*, and all of which he seems to have since discharged by actual payments.

To that extent, the Chancellor gave *Averill* the prior right. And so far, there is no disposition to disturb the decree.

But, between the date of Guthrie's mortgage and *Locke's* death, in November, 1834, *Averill* had incurred other liabilities for the latter, most of which he had discharged by payments before the date of the decree, and about two hundred and forty seven dollars of which he had become liable for, as Locke's surety, before August, 1834, when, for securing indemnity against *those liabilities*, he took a deed of trust on the same Chesnut street property, and an assignment of a leasehold interest held by Locke, in another house and lot also included in Guthrie's mortgage.

As Locke held an unincumbered legal interest in the lease when he mortgaged it to Guthrie, the registration of that mortgage was, without doubt, constructive notice to Averill; and therefore, as to Guthrie's prior right to the leasehold estate, there can be no question.

Whether, as to the Chesnut street property, Averill shall be preferred to Guthrie, to the extent of the liabilities, or of any of them, which were incurred for Locke after the date of Guthrie's mortgage, is the principal question discussed by the Chancellor, in two learned and very elaborate opinions, in which he recognizes the British doctrines *of tacking*, *in extenso.*

Having decided that Averill had no actual notice of Guthrie's mortgage before the 15th of August, 1834, when he took the deed of trust and the assignment of the lease, the Chancellor decreed that he should tack to his prior mortgage the amount of the liabilities ($247) incurred by him, as Locke's surety, between the date of Guthrie's mortgage, and the 15th of August, 1834; and refused to allow him to tack the amount of any liability incurred since the latter date. And having ascertained that Averill owed Locke five hundred and twenty five dollars, for work, for

*Spring Term 1839.*

*Averill*
vs
*Guthrie.*

sequent advances are not connected, by the proof, with his mortgage, & that he had actual notice of the junior mortgage, and so the case not with-in the British rule, the question of *tacking*, is not decided or considered here.

Where legal titles and equities are included in the same mortgage—though the registration, is *implied* notice to all the world, as to the property not before encumbered, it does not follow, that subsequent purchasers have actual notice of it, from the mere fact of registration (never seen by them perhaps,) or are bound by it, so far as it only trans fers an equity.

A mortgagee was told that a person was drawing, or about to draw, another mortgage on the same property; on another occasion he stated to a party interested, that he had examined the clerk's office &c. and he had frequent transactions with the mortgagor, whose embarrassments were notorious: *held* that these facts are sufficient to affect him with notice, or at least, to repel his claim of a right to tack subsequent ad-

# 84 DECISIONS OF THE COURT

Spring Term 1839. Averill vs Guthrie.

vances to his mortgage debt. A mortgagor who had included the same property in three successive mortgages, to different individuals, sold it to the first mortgagee, & thereby extinguished his mortgage, and received of him $1000, the residue of the price; and this was done with the assent of the second mortgagee: but, as it does not appear that the mortgagor would have made the sale without getting the $1000 himself, or that a coercive sale would have produced more than the debt secured by the first mortgage—it is *held* that the second mortgagee shall not be postponed (as to $1000 of his debt) to the third, as to other property embraced in their respective mortgages.

Mortgagee had given a note to the mortgagor, &, tho' he had the note in his possession, after the death of the mort gagor, as he does not account for that fact, or show that he had paid the note, he is held accountable for it, as a reduction of his mortgage debt, in favor of the subsequent mortgage.

three hundred and twenty one dollars of which he had given his promissory note, in September, 1834, which was in his own possession since Locke's death—the Chancellor also decreed that five hundred and twenty five dollars should be deducted from the aggregate sum for which he had given Averill priority over Guthrie.

And each party now complains. Averill insists that the Chancellor erred in charging him with the five hundred and twenty five dollars, and in not giving him priority for all liabilities incurred after, as well as before, the 15th of August, 1834. And Guthrie objects to all allowance for liabilities incurred by Averill, since the date of his mortgage; and insists also, that Averill should be postponed to the extent of the sum ($1,000) which he permitted Locke to receive from Nelson.

When a prior mortgage does not provide for subsequent liabilities or advances, the British doctrine of tacking all such liabilities as shall have been incurred, or all such advances as shall have been made, on the faith of the property thus mortgaged, and without actual notice of a subsequent mortgage thereon, has not been conclusively established in this Court. And whether it should be recognized here, as either authoritatively settled, or as consistent with principle or analogy, we shall not now pause to determine or to consider; for, even as understood in England, it could not be applied to liabilities incurred or advances made by Averill since the date of his deed of trust, because there is no sufficient evidence to connect them with the Chesnut street property; and as to the two hundred and forty seven dollars included in the deed of trust on that property, we are of the opinion, that the liabilities for even that sum, were not incurred without actual notice of Guthrie's mortgage.

We do not concur with the Chancellor in the opinion that, because Averill, when he took the assignment of Locke's lease, had constructive notice of Guthrie's mortgage, so far as it included the leasehold estate, therefore he should be presumed to have had,

at the same time, actual notice of every thing else embraced by that mortgage. Constructive notice is equivalent to, or synonymous with, actual notice, only so far as the constructive notice operates *per se.* The registration of Guthrie's mortgage was constructive notice to *Averill* as to the leasehold, but not as to the equity of redemption. And though, therefore, he should be presumed to have had actual notice of all the contents of that mortgage from the 15th of August, 1834, if, on that day, he had read it, yet the fact, that he had only implied notice of it, as a lien on the leasehold, does not prove that he had actual notice of it, as a lien upon the equity of redemption in the Chesnut street property.

But it appears that, about the date of Guthrie's mortgage, Averill was told that Tyler was drawing, or was about to draw, such a mortgage; and it appears also that when, in June afterwards, Nelson was converting his mortgage into an absolute purchase, he expressed a wish to examine the clerk's office, to ascertain whether there was any intermediate lien, and was then told by Averill, that he himself had examined the office, and had thus ascertained that there was no such lien. If he had so examined the office, he saw Guthrie's mortgage. And therefore we are of the opinion that, considering these two facts, and the intimate association of *Averill* and *Locke,* and the known insolvency of the latter, the inference that Averill had actual notice of Guthrie's mortgage, from the date of it, is almost conclusive. It is, we are sure, strong enough at least to repel any assumed equity to the tacking of any of his subsequent liabilities not provided for or contemplated by his elder mortgage.

But nevertheless, it seems to us, that there is no sufficient ground for charging Averill with the thousand dollars paid to Locke by Nelson; because we may presume, from the facts, that Locke would not have made the sale to Nelson, unless he had been permitted to receive the thousand dollars; and there is no proof that a coercive sale would have produced more than the amount of Nelson's debt.

As to the five hundred and twenty five dollars, we are of the opinion that Averill should not be charged with the whole of that sum. So much of it as was not included in the note for three hundred and twenty one dollars was, as we feel bound to presume, actually absorbed by advances previously made to Locke, and therefore, the note was given for only three hundred and twenty one dollars. But there is no satifactory proof that the amount of the note was ever actually paid to Locke, or otherwise extinguished in such a manner as to exonerate Averill from the equitable duty of giving a credit therefor on his mortgage. He has neither shown nor alleged how he paid it, or how or when he got possession of the note.

Then, taking from Averill, as we have done, the two hundred and forty seven dollars allowed to him by the decree, and relieving him, as we have also done, of two hundred and four dollars of the five hundred and twenty five dollars charged against him in the decree, it would appear that the Chancellor has allowed him about forty three dollars more than he is entitled to.

But the facts are so vague and indeterminate respecting this whole matter of the five hundred and twenty five dollars, and it is, moreover, so probable that *Averill* made, to some inconsiderable extent at least, payments to Locke after the date of the note for three hundred and twenty one dollars, as to bring us to the conclusion that more injustice might be done by a reversal than by an affirmance of the decree. And we are not inclined, therefore, to reverse it for the mere *semblance* of error to the extent of not more, and probably much less, (if there be error at all,) than forty three dollars.

Wherefore, although we arrive at the same general conclusion by a process essentially different from that of the Chancellor, we are of the opinion that his decree should be affirmed.